THE PEOPLE ex rel. THE SOUTHERN COTTON OIL COMPANY, Appellant, *v.* EDWARD WEMPLE, as Comptroller, etc., Respondent.

A manufacturing corporation created by the laws of another state, but doing business in this state, is subject to taxation, under the act of 1881 (Chap. 361, Laws of 1881).

The basis of such tax is the amount of its capital in use here in the transaction of its ordinary business.

The said act is not in conflict with the provisions of the Federal Constitution conferring upon congress the exclusive power to regulate commerce between the states.

The only limitation upon the power of a state to exclude a foreign corporation from doing business within its limits, or to exact conditions for such a privilege, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign.

The fact that state legislation upon the subject may indirectly affect commerce, does not render it unconstitutional.

Where, therefore, it appeared that a corporation of another state engaged in a manufacturing business, maintained a sales agency in this state, with a depot or warehouse for its manufactures, sold a large portion thereof in the state and delivered them to purchasers therein, and kept large sums of money on deposit in banks of the state for the purposes of its business, *held*, that it was liable to taxation under said act; that the fact it was selling some part of its manufactures in other states or foreign countries, did not establish that it was engaged in interstate or foreign commerce within the meaning of said constitutional provision.

*It seems* the property of a foreign corporation, engaged in foreign or inter-state commerce, may be taxed equally with like property of a domestic corporation engaged in the same business, but a tax or other burden imposed upon the property of either corporation because it is used to carry on that commerce, or upon the transportation of persons or property, or for the navigation of public waters, is invalid, as an interference with the power of congress in the regulation of commerce.

Reported below, 61 Hun, 83.

(Argued November 30, 1891; decided February 2, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made the first Tuesday of May, 1891, which confirmed the proceedings of the defendant in assessing and imposing a tax upon the relator and settling an account therefor.

The facts, so far as material, are stated in the opinion.

*William W. MacFarland* for appellant. The act in question, according to its true construction, does not subject the relator's business to taxation, and the comptroller, therefore, had no jurisdiction to make the assessment. (*People* v. *E. T. Co.*, 96 N. Y. 387; *People ex rel.* v. *Comrs.*, etc., 23 id. 242; *McLean* v. *Jephson*, 123 id. 151; *P. S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Ratterman* v. *W. U. T. Co.*, 127 id. 411; *Brown* v. *Maryland*, 12 Wheat. 419; 117 N. Y. 241; Laws of 1885, chap. 501; 59 N. Y. 40; *Foster* v. *H. S. M. Co.*, 105 id. 81; *Commonwealth* v. *S. O. Co.*, 101 Penn. St. 132; *G. F. Co.* v. *Pennsylvania*, 114 U. S. 196; *M. F. Co.* v. *Cochrane*, 12 Pitts. 238; *In re A. & C. R. R. Co.*, 9 Blatch. 290.) If the statute in question is to be construed as imposing a tax upon the relator's business in this state, it is in conflict with the commercial clause of the Federal Constitution and void. (92 U. S. 575; *People* v. *E. T. Co.*, 96 N. Y. 387; *G. F. Co.* v. *Pennsylvania*, 114 U. S. 196; *P. S. S. Co.* v. *Pennsylvania*, 122 id. 326; *P. T. Co.* v. *W. I. T. Co.*, 96 id. 1; *Leloup* v. *Port of Mobile*, 127 id. 641; *California* v. *P. R. R. Co.*, Id. 1, 39; *Cherokee Nation* v. *K. R. Co.*, 135 id. 641–657; *Bowman* v. *C.*, etc., *R. Co.*, 125 id. 465; *Leisy* v. *Hardin*, 135 id. 100; *Minnesota* v. *Barber*, 136 id. 313;

*Swift* v. *Sutphin,* 39 Fed. Rep. 630 ; *C. M. Co.* v. *Ferguson,* 113 U. S. 727 ; *McCall* v. *California,* 136 id. 104 ; *Robbins* v. *Shelby,* 120 id. 489 ; *Asher* v. *Texas,* 128 id. 129 ; *Bank Tax Case,* 2 Wall. 200 ; *Guy* v. *Baltimore,* 100 U. S. 434 ; *In re Jacobs,* 98 N. Y. 98 ; *Passenger Case,* 7 How. [U. S.] 283 ; *Henderson* v. *Mayer,* 92 U. S. 259 ; *People* v. *Compagnie Trans-Atlantique,* 107 id. 59 ; *Mugler* v. *Kansas,* 123 id. 623.)

*Charles F. Tabor, Attorney-General,* for appellant. The word " may " in section 19, chapter 361, Laws of 1881, is not mandatory ; the whole section shows that the authority given to the comptroller to " unsettle " the taxes already settled against a corporation by his predecessors was not intended to be compulsory, but permissive only. (*Gilmore* v. *City of Utica,* 121 N. Y. 569.) A repeal of former provisions in a general statute by other provisions contained in a later amendatory act will certainly not be favored by the courts where the repeal is only by implication. (*Hankins* v. *Mayor, etc.,* 64 N. Y. 22 ; *In re Curser,* 89 id. 403 ; *Marks* v. *State,* 97 id. 578 ; *State* v. *County of Kings,* 125 id. 323.) It appears from the return that the relator is doing business in this state, and the return upon this point is conclusive. (*People* v. *Dains,* 38 Hun, 43 ; *People* v. *Mayor, etc.,* 6 id. 652 ; *People* v. *Fire Comr.,* 73 N. Y. 437 ; *People* v. *Knowles,* 47 id. 415 ; *People* v. *Wheeler,* 21 id. 82 ; *People* v. *Goodwin,* 5 id. 568 ; *People* v. *French,* 25 Hun, 111 ; *People* v. *Suprs.,* 49 id. 479 ; *People* v. *Comrs.,* 106 N. Y. 64 ; *Central Park* v. *Comrs.,* 21 N. Y. S. R. 358.) The relator was " doing business in this state," within the meaning of the term as used in section 3 of the act of 1880 and 1881. (*People* v. *E. T. Co.,* 96 N. Y. 387 ; *People* v. *H. S. M. Co.,* 105 id. 76 ; *S. C. O. Co.* v. *Wemple,* 44 Fed. Rep. 24.) The corporation tax laws are not in conflict with the provisions of the Federal Constitution, which confers upon congress the exclusive power to regulate commerce between the states. (*H. Ins. Co.* v. *State,* 92 N. Y. 328 ; 92 U. S. 575 ; *Bank of Augusta* v. *Earle,* 13 Pet. 519 ; *Paul* v. *Virginia,* 8 Wall. 168 ; *Ducat* v. *Chicago,* 10 id. 410 ; *H. M. Co.* v. *Ferguson,*

113 U. S. 732; *P. T. Co.* v. *W. U. T. Co.*, 96 id. 12; *P. M. Co.* v. *Pennsylvania*, 125 id. 181; *Smith* v. *Alabama*, 124 id. 482; *H. Ins. Co.* v. *New York*, 134 id. 599; *W. U. T. Co.* v. *Massachusetts*, 125 id. 530; *Marye* v. *B. & O. R. R. Co.*, 127 id. 123; *P. P. C. Co.* v. *Pennsylvania*, 141 id. 231; *M. Co.* v. *Gage*, 100 id. 677; *G. F. Co.* v. *Pennsylvania*, 114 id. 211; *L. R. Co.* v. *Mississippi*, 133 id. 591.)

O'Brien, J.  The relator is a corporation organized under the laws of New Jersey, having an authorized capital of five million dollars, four million of which has been issued.  On September 2, 1890, the comptroller of this state, in pursuance of chapter 361 of the Laws of 1881, fixed and determined the amount of taxes due from the relator to the state for the three years ending November 1, 1889, at $2,303.42, and in arriving at this result, he found that the amount of its capital stock employed by the relator within this state was $100,000 for the year 1887; $1,333,333 for the year 1888, and $121,212 for the year 1889.  No question appears to be made by the relator in regard to the correctness of the comptroller's action in estimating and fixing the amount of its capital in use in this state, or in determining the amount of the tax thereon, if it is liable for any tax at all.  The relator's sole contention on this branch of the case is that it is not doing business within the state, and hence is not within the statute.  If the relator is within the statute, and the comptroller had jurisdiction to inquire and determine whether the relator was employing any part of its capital in business within this state, and, if so, the amount, we do not understand that the relator complains of the disposition made of the facts bearing on the questions of value.  In regard to the facts bearing on the question whether the relator is doing business within this state, the return to the writ of certiorari brought to review the action of the comptroller, states that it " consisted in part of maintaining a sales agency in the city of New York, and in selling the product of its mills in this state, and in refining crude oil within this state and delivering the same to purchasers therein, and maintaining a depot

or warehouse in the state of New York for the storage of its products therein, and in keeping on deposit, in the banks in the city of New York, large sums of money for the use of the relator and for the carrying on of its business; that during the year 1887, nearly forty per cent of the total sales of products by the relator were sales made in the state of New York; and during the year 1888, over thirty-three and one-third per cent of the total sales of relator's products were made in the state of New York; and during the year 1889, over three per cent of its total sales were made in the state of New York." It further appears that the relator's business is the manufacture and production of oil from cotton seed, and refining and selling the same. Its principal office is at Camden, New Jersey, but it has an office or agency in the city of New York. During the year 1888 it kept in banks of this state for use in the transaction of its business, $15,124, and during the year 1889, $88,773.74. During the three years for which the tax was assessed, it sold in this state about one-third of its whole product. There can be no doubt that a corporation created by the laws of another state, but doing business in this state, is subject to the jurisdiction of the officer whose duty it is, under the act of 1881, to determine and assess the amount of taxes which corporations are bound to pay to the state, and is subject to taxation as well as a domestic corporation. The basis of the tax is the amount or portion of its capital in use here in the transaction of its ordinary business. How much that may be in any particular case is generally a question of fact to be determined by the comptroller under the procedure pointed out by the statute. There is no injustice or hardship in such a law. If a foreign corporation or a corporation created by the laws of a sister state employs the whole or a portion of its capital here, and thus has the benefit and protection of the government and laws of the state to the extent of the capital so employed, there is no reason why it should not be subjected, to the extent of the capital so employed, to the same burdens and obligations as a domestic corporation. The tax is not imposed upon its property, but for the privilege which is

extended to it by the state of doing business here as a corporation and in its corporate name.   Since the statute has been amended so as to make the amount of capital used in this state the basis of the tax, the amount of business transacted here is of much less importance than formerly.   If but a very small part of the corporate business is done here and but a small part of the capital employed here, then the tax is correspondingly light.   The facts in this case show that during the year for which the assessment was made, the relator employed a portion of its capital and conducted a substantial part of its business operations within this state, and that was enough to subject it to the obligation to defray some part of the public burdens.   The statute in question, in its application to corporations created by the laws of another state and doing business here, has been frequently construed by this court and the principles applicable to such cases stated.   The facts of this case bring it within the rule of liability enunciated in these cases. (*People* v. *Equitable Trust Co.*, 96 N. Y. 387; *People* v. *Horn Silver Mining Co.*, 105 id. 76; *People ex rel. American Contracting & Dredging Co.* v. *Wemple*, 129 N. Y. 548.)

The statute under which the tax in question was imposed is not in conflict with the provisions of the Federal Constitution, which confers upon congress the exclusive power to regulate commerce between the states.   Though the relator is a New Jersey corporation, its principal manufacturing operations are carried on in the southern or cotton-producing states.   For the purpose of disposing of its product it is necessary or convenient to establish and keep an agency in the city of New York, and to employ some part of its capital here, though it may be a comparatively small part, and to sell a considerable part of the product of its factories here.   All this it does in its corporate name and character.   The state has the power to exclude corporations of other states from doing business within its jurisdiction.   If, however, it permits them to come here and transact their business, it may impose a tax upon them for this privilege, and this is not a regulation by the state of interstate commerce, but a lawful exercise of the power of taxation

upon corporate bodies that for the time being are within its jurisdiction for that purpose. If the contention of the learned counsel for the relator should prevail, then any manufacturing corporation in other states, or even in a foreign country, could come here and establish an office or agency and transact a part, or even the whole, of its business here and escape taxation entirely upon the ground that it was engaged in selling some part of its product in other states, or in foreign countries, and, therefore, was engaged in interstate or foreign commerce, within the meaning of the Federal Constitution. The commercial clause of the Federal Constitution does not preclude the states from exercising the power of taxation in such a case as is disclosed by this record. The cases in which statutes enacted by the states have been held invalid as regulations of commerce, were stated by Mr. Justice Field in *Sherlock* v. *Ailing* (93 U. S. 102). As those legislative acts which "imposed a tax upon some instrument or subject of commerce, or exacted a license fee from parties engaged in commercial pursuits, or created an impediment to the free navigation of some public waters, or prescribe conditions in accordance with which commerce in particular articles, or between particular places, was required to be conducted." They are all cases which operate directly upon commerce. In another part of the same opinion the learned judge explains the scope and meaning of the provision conferring upon congress exclusive power to regulate commerce. "In conferring upon congress the regulation of commerce, it was never intended to cut the states off from legislating on all subjects relating to the health, life and safety of its citizens, though the legislation might indirectly affect the commerce of the country. Legislation in a great variety of ways may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." The only limitation upon the power of a state to exclude a foreign corporation from doing business within its limits or to exact conditions for such a privilege, arises where the corporation is in the employ of the federal government, or where its business is strictly

commerce, interstate or foreign. (*Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 12; *Pembina Mining Co.* v. *Penn.*, 125 U. S. 181, 190.)

The cases are numerous in the highest federal court where legislation, such as that now under consideration, has been held to be valid, and none of the cases cited by the learned counsel for the relator hold that a state statute imposing a tax upon a manufacturing corporation of another state for the privilege of doing business here is invalid. (*State Tax Cases*, 15 Wall. 232; *State Tax on Gross Receipts*, Id. 284; *Delaware R. R. Tax Case*, 18 id. 208; *Erie R. R.* v. *Penn.*, 21 id. 492; *Phila. Fire Asso.* v. *New York*, 119 U. S. 119; *Smith* v. *Alabama*, 124 id. 482; *Home Ins. Co.* v. *New York*, 134 id. 599; *Marye* v. *B. & O. R. R.*, 127 id. 123.) The property of a foreign corporation engaged in foreign or interstate commerce may be taxed equally with like property of a domestic corporation engaged in the same business, but a tax or other burden imposed upon the property of either corporation because it is used to carry on that commerce, or upon the transportation of persons or property, or for the navigation of the public waters over which the transportation is made, is invalid and void, as interference with and obstruction of the power of congress in the regulation of commerce. (*Gloucester Ferry Co.* v. *Penn.*, 114 U. S. 211.)

The obligation imposed upon the relator by the act of 1881 to pay a tax to the state treasury as a condition of enjoying the privilege of transacting business here does not, in our opinion, conflict with any provision of the Federal Constitution.

The judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.