158  PEOPLE ex rel. PARKE, DAVIS & CO. *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1895.        [Vol. 91.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. PARKE, DAVIS & COMPANY, Relator, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

*Tax — a foreign manufacturing corporation is not upon the footing of domestic corporations — not a "citizen" — corporate rights are special privileges — a State may exclude a foreign corporation — it may impose a tax on its business — when such business is not interstate commerce — what constitutes "doing business" in the State of New York.*

The provisions of section 2 of article 4 of the Constitution of the United States, that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," afford no basis for a claim by a foreign manufacturing company that it should be permitted to do business in the State of New York upon the same footing and with the same exemptions as a domestic corporation wholly engaged in manufacturing within the State of New York.

The right of citizens to associate themselves together and to do business as a corporation is not a natural or inherent right, but is a special privilege granted by the sovereign power, and a privilege so granted cannot be exercised in a sovereignty other than that granting it, except through the principle of comity.

Corporations are not "citizens" within the meaning of the clause of the United States Constitution referred to, and the right of a State to exclude from it foreign corporations is well settled.

A State may impose upon a foreign corporation, dependent for its right to do business upon the assent of the State, such reasonable terms and conditions as it deems proper.

The imposition of a tax upon the privilege granted to a foreign corporation of doing business in the State of New York, measured by the amount of the capital employed in such business within the State of New York, is entirely within the power of the State.

Where a foreign corporation establishes a place for the sale of its goods within the State of New York, pays rent for the premises, hires and employs agents and employees to conduct its business, and sells its product from such place of business, it transacts business within the State of New York.

A business so conducted does not constitute interstate commerce so as to exempt the corporation from a tax upon its business.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of October, 1895, directed to James A. Roberts, Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings and accounts and all the evidence submit-

PEOPLE ex rel. PARKE, DAVIS & CO. v. ROBERTS. 159

Hun.]        Third Department, December Term, 1895.

ted to him in the matter of the taxes due and payable by the relator.

*James McKeen*, for the relator.

*T. E. Hancock, Attorney-General*, and *G. D. B. Hasbrouck, Deputy Attorney-General*, for the respondent.

Herrick, J.:

This is a proceeding to review by certiorari the decision of the Comptroller of the State in assessing and levying a corporation tax upon the relator.

The relator is incorporated for manufacturing purposes under the laws of the State of Michigan, and is engaged in the business of manufacturing preparations for pharmacists and chemists. Such manufacture consists in the preparation of chemical compounds and pharmacists' preparations, by taking the crude materials and by various processes producing compounds and preparations in a concentrated form, convenient for using for medicines, such as fruit extracts and solid extracts. The factory is situated in the city of Detroit, Mich.

Prior to the years for which the relator has been taxed by the Comptroller the relator shipped its products in unbroken packages to a wholesale drug concern in the city of New York, which sold the same upon commission. The house to which it consigned its goods did not give its exclusive attention to the sale of relator's merchandise, but was a general dealer. For the purpose of having exclusive attention given to its line of goods the relator changed its method of doing business, and selected a person named Clay, to whom it consigned its products. There is a debit and credit account between the relator and Clay, of the goods received by him, and of the amount sold. He remits the amount realized from sales made, and receives from it a stated salary; he is not paid by a commission upon goods sold; a stock of the relator's products is always kept on hand by him; stores are leased and clerks employed at the relator's expense. Such expense ranged from $102,000 in the year 1890 to $172,000 in the year 1894, which includes salaries of employees, rentals, insurance and repairs.

The orders received in New York city and its immediate vicinity

160  PEOPLE ex rel. PARKE, DAVIS & CO. v. ROBERTS.

Third Department, December Term, 1895.        [Vol. 91.

are supplied from this store, or headquarters, in New York city. Orders received in what are known as the country districts, that is, in places at considerable distance from New York city, are filled by transmitting such orders to the home establishment at Detroit, Mich., and the goods are shipped direct from the factory there to the persons ordering them.

The stock carried in the store in New York city is of the average amount of $50,000. Mr. Clay also purchases crude drugs in Europe, which he imports to this country, through the port of New York. A portion of such importations are sent to the home establishment at Detroit, and another portion is sold from the New York store. Purchases of crude drugs are also made by him in New York; some are shipped to Detroit, and some are sold in New York city.

These goods are purchased upon the credit of the relator; it invests no cash in their purchase.

It is contended by the relator that Mr. Clay is not its agent; that he is carrying on an independent business in its drugs, and stands in the same relation to it as any merchant in such city purchasing its drugs, or a commission merchant to whom it should consign goods to be sold upon commission, and that, therefore, it should not be taxed as a corporation doing business in this State.

Without entering into any discussion as to what constitutes the relation of principal and agent, it seems to me very clear that Mr. Clay is in fact the agent of the relator. The rent of the establishment from which its drugs are sold in New York city is paid by the relator; it pays the insurance, taxes and repairs; it pays the salaries of the various employees engaged in conducting the business there.

It keeps a stock of its goods to a large amount at the store in New York city. Charging the goods to him, and keeping a debit and credit account between itself and Clay, is simply a convenient way of keeping an account of its transactions with its New York city branch. That is its distributing agency in the State of New York.

The goods that are purchased by Mr. Clay in Europe are purchased upon its credit. The entire proceeds of the sales in New York city are transmitted by Clay to the relator; he is paid a stated compensation, which is not dependent upon or measured by the amount of the sales or of the profits. He appears to be simply its

PEOPLE ex rel. PARKE, DAVIS & CO. v. ROBERTS. 161

Hun.]            THIRD DEPARTMENT, DECEMBER TERM, 1895.

representative, managing and conducting its business in the city of New York for and on its behalf.

But relator further contends that, assuming that Clay is its agent, it is carrying on a manufacturing business; that the sale of its products are a necessary incident to the manufacturing business, and that if it was incorporated under the laws of the State of New York, and doing business here, it would, at least to the extent of the products of its own manufacture, be exempt from taxation within the case of *The People ex rel. Tiffany & Co.* v. *Campbell* (144 N. Y. 166), and at most only be taxable upon the business that it transacts in goods other than those manufactured by itself; and it claims that under article 4, section 2, of the Constitution of the United States, providing that " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," it should be permitted to do business upon the same footing as domestic corporations wholly engaged in manufacturing, and, if taxed at all, should only be taxed upon that business which is carried on by it in excess of its corporate powers, as was done in the *Tiffany* case.

We do not think that this last contention can prevail.

The right of citizens to associate themselves together, and do business as a corporation, is not a natural or inherent right, but is a special privilege granted by the sovereign power; and a privilege so granted cannot be exercised in a sovereignty other than that granting it, except by comity; to hold otherwise would extend the power of such sovereignty beyond its territory, and give to its laws extra-territorial force and effect.

Again, corporations are not citizens within the meaning of that clause of the Constitution relied upon. " The privileges and immunities secured to citizens of each State in the several States by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their Constitution and laws by virtue of their being citizens. Special privileges enjoyed by citizens in their own States are not secured in other States by this provision. It was not intended by the provision to give to the laws of one State any operation in other States. They can have no such operation, except by the permission, express or implied,

of those States. The special privileges which they confer must, therefore, be enjoyed at home, unless the assent of other States to their enjoyment therein be given." (*Paul* v. *Virginia*, 75 U. S. 168; *People* v. *Imlay*, 20 Barb. 68–80.)

The right of the State to exclude foreign corporations has been repeatedly adjudicated upon, and is well settled. (*People* v. *Fire Association of Phila.*, 92 N. Y. 311.)

The right of a corporation incorporated in a foreign State to do business in this State, being dependent upon the assent of this State, this state may impose such reasonable terms and conditions upon such assent as it deems proper. It is unnecessary to cite authorities to show that a tax upon a foreign corporation for the privilege of doing business here, measured by the amount of its capital stock employed in such business, within this State, is one entirely within its power. That establishing a place for the sale of its goods within this State, paying rent therefor, hiring and employing agents and employees to conduct such business, selling its products from such place, is transacting business within this State, seems to me can admit of no question. That a business so conducted and carried on is not interstate commerce, which will prevent the corporation carrying it on from being taxed, has been held in the case of *The People ex rel. Southern Cotton Oil Co.* v. *Wemple* (131 N. Y. 64).

The writ of certiorari should, therefore, be quashed and the decision of the Comptroller affirmed, with fifty dollars costs and disbursements.

