THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEMBECK & BETZ
EAGLE BREWING COMPANY, Relator, *v.* JAMES A. ROBERTS, as
Comptroller of the State of New York, Respondent.

*Taxation — of a foreign corporation employing an agent to solicit orders in the State
of New York, where it keeps no goods for sale — providing a place for the agent to
receive orders and for the temporary deposit of goods does not make it taxable.*

A New Jersey corporation, engaged in manufacturing beer in that State and in
the State of New York, employed an agent to solicit orders in New York city
and Brooklyn, the moneys collected by the agent being deposited in a Brook-
lyn bank, the average balance being about $500. The corporation did not keep
any goods on sale in the State of New York, but shipped them from Jersey
City directly to the purchaser. It did, however, provide a place in Brooklyn
where its agent might take orders, and where goods, not exceeding in value
$100 at any one time, which its drivers had been unable to take to Jersey City,
were stored until the following morning.

*Held,* that the corporation was not doing business, other than a manufacturing
business, within the State of New York, within the meaning of the statutes
imposing a franchise tax (Chap. 542, Laws of 1880, and the various acts amend-
atory thereof, and chap. 240, Laws of 1895).

CERTIORARI issued out of the Supreme Court and attested on the
7th day of June, 1897, directed to James A. Roberts, Comptroller
of the State of New York, commanding him to certify and return
to the office of the clerk of the county of Albany all and singular
his proceedings in assessing upon the relator a business or franchise
tax under chapter 542 of the Laws of 1880, and the acts amendatory
thereof and supplemental thereto, and the license tax or fee under
chapter 240 of the Laws of 1895.

*Henry S. Wardner* and *John L. Cadwalader*, for the relator.

*T. E. Hancock, Attorney-General,* and *G. D. B. Hasbrouck,
Deputy Attorney-General,* for the respondent.

MERWIN, J.:

The relator is a foreign corporation organized under the laws of
the State of New Jersey and is located at Jersey City in that State,
where it is engaged in the business of manufacturing and selling
beer. It has a malthouse at Watkins, in Schuyler county, State of
New York, where it is engaged in making malt. It seems to have

been claimed at the hearing before the Comptroller that the business of making malt was not manufacturing. That position, however, is not here asserted, but it is claimed that the relator is engaged in this State in other business than manufacturing malt, and is, therefore, taxable on the amount of its capital stock employed in this State. The defendant's position is " that the relator had a place of business in Brooklyn where it transacted the business of storing and making sales of beer and liquors manufactured in the State of New Jersey, and that it collected moneys, the proceeds of such sales made within the State of New York, in Brooklyn and in New York, and that it kept such moneys as it collected from its Brooklyn patrons on deposit in Brooklyn, and that it has maintained its agent there, and that it did in Brooklyn the business of selling and delivering its New Jersey product."

It appears that the relator employed an agent or salesman who lived in Brooklyn and owned there a dwelling house. He was paid for salary and rent of house $150 a month, his salary being $1,500 a year, and the rent being $300 a year. The house was used as a place for the temporary storage of articles sent from Jersey City for the purpose of filling orders previously obtained and transmitted to the place of business of the corporation in Jersey City. As to this place in Brooklyn, Mr. Kellers, the only witness sworn, testifies : " It is sort of a storage there. Ques. How much of a stock do you keep there ? Ans. Very little. I don't suppose it would run over one hundred dollars at a time. It is just where the drivers go on the route, and can't take all the stuff in the truck. They leave it there over night and take it the next day. Ques. Drivers from Jersey City ? Ans. Yes, sir." The same witness also testifies at a later date, as follows : " Ques. What are the duties of this agent at Brooklyn ? Ans. To help deliver beer ; to collect and to receive orders. Ques. The orders he receives he transmits to Jersey City ? Ans. Yes, sir. Ques. And the same is true of orders received by drivers ? Ans. Yes, sir. Ques. The brewery ships direct to the purchasers ? Ans. Yes, sir. Ques. You keep no store in Brooklyn ? Ans. You might call that a storage — whatever you might term it. Ques. But I understand this storage is only occasionally — the putting up of goods over night when the driver hasn't time to go to Jersey City ? Ans. That is the object of the store or depot. Ques. And no regular

284   PEOPLE ex rel. BREWING CO. v. ROBERTS.

THIRD DEPARTMENT, NOVEMBER TERM, 1897.          [Vol. 22.

stock of goods is kept there? Ans. No." This agent in his collections for the relator receives not to exceed $20,000 a year, the sales being about 3,000 barrels a year. The agent as he makes collections deposits them in a bank in Brooklyn to the credit of the relator and they are drawn only by the relator upon its own checks at its pleasure. The average balance to the credit of the relator is about $500. The total amount of sales made by the relator during the year ending November 1, 1895, whether made in New York or elsewhere, was about $900,000. The capital of the relator is $650,000.

It is quite apparent that the relator did not keep its goods on sale in Brooklyn and had no office or business domicile there within the ordinary meaning of those terms. It provided a place where its agent could take orders and supply temporary storage for packages in the process of delivery from the relator's place of business in Jersey City.

Within the rulings of the United States Supreme Court the relator had the right through its agents to solicit in this State orders for sales of goods manufactured at and delivered from New Jersey, without any tax or restriction on the part of this State. (*Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Brennan* v. *Titusville*, 153 id. 289.) The negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is said to be interstate commerce. It is not to be presumed that the State intended to tax a business of that kind. If the relator had a right to solicit orders, without being taxed, it certainly had a right with like freedom to make deliveries from its place of business in New Jersey in fulfillment of such orders, and the collection of the moneys from the sales and their transmission to the relator were only incidents to carrying on its interstate business. The fact that the machinery with which an interstate business is carried on is to some extent located within this State does not make such business taxable here. (*People ex rel. Penn. R. R. Co.* v. *Wemple*, 65 Hun, 252, 261; affd. in the Court of Appeals, 138 N. Y. 1.)

The cases of *People ex rel. Southern Cotton Oil Co.* v. *Wemple* (131 N. Y. 64) and *People ex rel. Parke, Davis & Co.* v. *Roberts* (91 Hun, 158) are clearly distinguishable from the present case.

In those cases, the goods of the relator were to a considerable extent stored in this State and sales were made therefrom by its agents here.

We are of the opinion that upon the facts shown in this case the relator, aside from its business of manufacturing malt, was not doing business within this State within the meaning of our statutes imposing a franchise or license tax. It follows that the determination of the Comptroller should be reversed.

All concurred.

Determination of the Comptroller reversed, with fifty dollars costs and disbursements.