PEOPLE ex rel. LEMBECK & BETZ EAGLE BREWING CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. November 10, 1897.)

FRANCHISE AND LICENSE TAX—FOREIGN CORPORATION.

A foreign brewing company had an agent residing in New York, who made collections and received orders, that he sent to the home office to be filled. In his house small quantities of the company's manufactured product were frequently stored over night, for the convenience of the drivers, whose duty it was to transport the product directly from the company's place of business in the foreign state to the purchasers in New York. Held, the corporation was not doing business in New York, within Laws 1880, c. 542, imposing a franchise tax, and Laws 1895, c. 240, imposing a license tax.

Certiorari, on the relation of the Lembeck & Betz Eagle Brewing Company, to review the determination of James A. Roberts, as comptroller of the state of New York, in assessing upon the relator a business or franchise tax under Laws 1880, c. 542, and the acts amendatory and supplemental thereto, and a license tax or fee under Laws 1895, c. 240. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Henry S. Wardner and John L. Cadwalader, for relator.

T. E. Hancock and G. D. B. Hasbrouck, for defendant.

MERWIN, J. The relator is a foreign corporation, organized un-
der the laws of the state of New Jersey, and is located at Jersey City,
in that state, where it is engaged in the business of manufacturing
and selling beer. It has a malt house in Watkins, in Schuyler coun-
ty, state of New York, where it is engaged in making malt. It seems to
have been claimed at the hearing before the comptroller that the busi-
ness of making malt was not manufacturing. That position, however,
is not here asserted, but it is claimed that the relator is engaged in this
state in other business than manufacturing malt, and is therefore tax-
able on the amount of its capital stock employed in this state. The
defendant's position is:

"That the relator had a place of business in Brooklyn, where he transacted
the business of storing and making sales of beer and liquors manufactured in
the state of New Jersey; and that it collected moneys, the proceeds of sucn
sales made within the state of New York, in Brooklyn and in New York; and
that it kept such moneys as it collected from its Brooklyn patrons on deposit
in Brooklyn; and that it has maintained its agent there; and that it did in Brook-
lyn the business of selling and delivering its New Jersey product."

It appears that the relator employed an agent or salesman who lived
in Brooklyn and owned there a dwelling house. He was paid for
salary and rent of house $150 a month, his salary being $1,500 a year,
and the rent being $300 a year. The house was used as a place for
temporary storage of articles sent from Jersey City for the purpose of
filling orders previously obtained and transmitted to the place of busi-
ness of the corporation in Jersey City. As to this place in Brooklyn,
Mr. Kellers, the only witness sworn, testifies:

"It is sort of a storage there. Ques. How much of a stock do you keep there?
Ans. Very little. I don't suppose it would run over one hundred dollars at a
time. It is just where the drivers go on the route, and can't take all the stuff
in the truck. They leave it there over night, and take it the next day. Ques.
Drivers from Jersey City? Ans. Yes, sir."

The same witness also testifies at a later date as follows:

"Ques. What are the duties of this agent at Brooklyn? Ans. To help deliver
beer; to collect and receive orders. Ques. The orders he receives he transmits
to Jersey City? Ans. Yes, sir. Ques. And the same is true of orders received
by drivers? Ans. Yes, sir. Ques. The brewery ships direct to the purchasers?
Ans. Yes, sir. Ques. You keep no store in Brooklyn? Ans. You might call
that a storage,—whatever you might term it. Ques. But I understand that
storage is only occasional,—the putting up of goods over night when the driver
hasn't time to go to Jersey City? Ans. That is the object of the store or depot.
Ques. And no regular stock of goods is kept there? Ans. No."

This agent, in his collections for the relator, receives not to exceed
$20,000 a year, the sales being about 3,000 barrels a year. The
agent, as he makes collections, deposits them in a bank in Brooklyn, to
the credit of the relator, and they are drawn only by the relator upon
its own checks, at its pleasure. The average balance to the credit of
the relator is about $500. The total amount of sales made by the

relator during the year ending November 1, 1895, whether made in New York or elsewhere, was about $900;000. The capital of the relator is $650,000.

It is quite apparent that the relator did not keep its goods on sale in Brooklyn, and had no office or business domicile there, within the ordinary meaning of those terms. It provided a place where its agent could take orders and supply temporary storage for packages in the process of delivery from the relator's place of business in Jersey City. Within the rulings of the United States supreme court, the relator had the right, through its agents, to solicit in this state orders for sales of goods manufactured at and delivered from New Jersey, without any tax or restriction on the part of this state. Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592; Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829. The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is said to be interstate commerce. It is not to be presumed that the state intended to tax a business of that kind. If the relator had a right to solicit orders without being taxed, it certainly had a right with like freedom to make deliveries from its place of business in New Jersey in fulfillment of such orders; and the collection ot the moneys from the sales, and their transmission to the relator, were only incidents to carrying on its interstate business. The fact that the machinery with which an interstate business is carried on is to some extent located within this state does not make such business taxable here. People v. Wemple, 65 Hun, 252, 261, 20 N. Y. Supp. 287, affirmed in the court of appeals 138 N. Y. 1, 33 N. E. 720. The cases of People v. Wemple, 131 N. Y. 64, 29 N. E. 1002, and People v. Roberts, 91 Hun, 158, 36 N. Y. Supp. 368, are clearly distinguishable from the present case. In those cases the goods of the relator were to a considerable extent stored in this state, and sales were made therefrom by its agents here. We are of the opinion that, upon the facts shown in this case, the relator, aside from its business of manufacturing malt, was not doing business within this state, within the meaning of our statutes imposing a franchise or license tax. It follows that the determination of the comptroller should be reversed.

Determination of the comptroller reversed, with $50 costs and disbursements. All concur.