PEOPLE ex rel. AMERICAN SODA–FOUNTAIN CO. v. ROBERTS.

(Supreme Court, Appellate Division, Third Department. May 10, 1898.)

TAXATION—EXEMPTION—MANUFACTURING CORPORATIONS.

Laws 1880, c. 542, § 3, as amended by Laws 1890, c. 522, providing for the taxation of corporations doing business in this state, exempts corporations wholly engaged in manufacturing within the state. *Held*, that a foreign corporation operating a manufacturing plant, in which all its capital in the state is employed, is exempt from taxation under the statute, even though it maintains offices in the state, where samples of its product are kept, from which sales of goods manufactured in another state are made; this part of the business being exempt from taxation under the interstate commerce law.

Herrick and Merwin, JJ., dissenting.

Certiorari by the people, on the relation of the American Soda-Fountain Company, against James A. Roberts, comptroller, to review a determination assessing a tax against relator. Determination reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Edmund L. Cole, for relator.

Theodore E. Hancock, Atty. Gen. (G. B. Hasbrouck, of counsel), for respondent.

PARKER, P. J. The relator is a corporation organized under the laws of the state of New Jersey, with a capital stock of $3,-750,000, and it carries on an extensive business in several states. The principal object "for which it was formed" is the manufacture and sale of soda and mineral water apparatus, and of supplies of all kinds for dealers therein, although it is authorized by its charter to purchase and sell such articles. In the city of New York it has a large manufactory, where it makes "soda-water apparatus and everything relating to that business." The articles so made are sold in this state, and that part of its business is carried on in the name of the "John Mathews Apparatus Company." Although it purchases from the manufacturer glassware to the extent of about $6,000 worth a year, yet such glass is made from models furnished by the relator, and is sold by it only in connection with the soda-water apparatus made by it, and as a part thereof. Its sole business carried on at this place and under that name, notwithstanding the purchase of such glassware, may fairly be considered a manufacturing business. At another place in New York City it has a sales agency, conducted under the name of "J. W. Tufts," and at another place in such city another sales agency conducted under the name of "A. D. Puffer & Sons." At these places nothing is sold except soda and mineral water fountains and their accompanying apparatus, manufactured by the relator without this state. And such sales are made by sample, and no stock for sale is kept at either of these places. The value of the samples kept in the Tufts place was about $10,000, and in the A. D. Puffer & Sons place was about $7,500. When sales were made from such samples, the orders were sent on to Boston, where the goods were made, and the articles shipped from there direct to the purchaser. No bank account was kept by these agencies. Money received from sales made was sent at once to the "home office in Boston," and when sales were made on credit the accounts were collected by that office. The persons in charge of such agencies in New York were paid by commissions on the sales made. None of the products made at the manufactory conducted in this state under the name of the "John Mathews Apparatus Company" were sold at these agencies, though, for a similar purpose, they were markedly different in style, and were sold direct from the factory where they were made, or through traveling salesmen. Occasionally a sample was sold and delivered at a sales agency, but this was rarely done, and only to meet an emergency. It seems that the stock kept at the sales agencies was in good faith kept there as samples only. It also appears that some conditional sales were made in this state, where the title to the property sold and delivered was held by the relator until paid for. But in such instances, it having already been sold, the property should not be considered as kept in this state for sale, or as capital employed herein.

From the foregoing statement it appears that the capital of the relator which is employed in this state is employed wholly in manufacture. It has no capital in this state, save what is employed in the business done under the name of the "John Mathews Apparatus Company." It evidently does other business in the state, but in conducting that it employs none of its capital here. People v. Roberts, 8 App. Div. 202, 40 N. Y. Supp. 417, affirmed 151 N. Y. 619, 45 N. E. 1134. It is true that under its charter it has the right to purchase and sell, as well as to manufacture and sell, the articles above mentioned. But it has not engaged in such business, and in that respect it differs from the case of People v. Campbell, 145 N. Y. 587, 40 N. E. 239. Under these circumstances I think that the relator was exempt from taxation under the provisions of section 3, c. 542, Laws 1880, as amended by chapter 522, Laws 1890. It was evidently carrying on two lines of business in this state. The one, that of manufacturing only, in which all the capital it had in this state was employed; the other, that of selling upon samples. This latter business was, however, protected from taxation by the federal laws regulating interstate commerce. Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829. See, also, People v. Wemple, 138 N. Y. 1, 33 N. E. 720. And we are therefore not to suppose that the legislature had it in mind when it provided in the section above cited that all foreign corporations "doing business" in this state should be taxed on such business; nor, in considering the exemption granted to such foreign corporations as should "wholly" engage in manufacturing within this state, should we assume that it intended such a business to operate against such exemption. The policy of the act was to compel foreign corporations who were having the benefit of our markets in the prosecution of their business to pay a just share towards the taxes of the state (People v. Roberts, 152 N. Y. 59, 63, 46 N. E. 161), but when their business was that of manufacturing within our state the advantages derived therefrom by the state were supposed to equal the benefits conferred; hence the exemption to those corporations which employed their capital in that class of business. The relator clearly comes within the spirit of that exemption. All the capital it has within the state is employed in manufacturing. The state has the full benefit of that business. The only other business is of a kind that not only employes no capital, but that is entirely beyond the authority of the state to interfere with. In no event could the state impose a tax on it for the benefits accruing from such a business, and therefore it could have had no interest or purpose to suppress its prosecution. All the legislation in that section, both as to imposing the tax and the exemption from it, is made without reference to such a business. Therefore the relator, notwithstanding its said sales by sample, is, within the meaning of the statute, wholly engaged in manufacturing in this state.

A similar conclusion was reached by this court in the case of People ex rel. Lembeck & B. Eagle Brewing Co. v. Roberts, 22 App. Div. 282, 47 N. Y. Supp. 949. It is true that in that case no

sales were made by sample, or salesroom had, in this state. Orders were taken in this state by traveling agents for beer made in New Jersey, and such beer was shipped to the purchaser from the brewery. But no difference is perceived, in principle, from such a mode of business and the one followed in this case. In either case it is the right to bring its goods from another state into this state, and sell them without license or other tax, that is preserved to the foreign party; and, so long as only samples are present here, and nothing is in this state to be taxed but the sale itself, it is a business that the federal law protects. In neither this case nor in the Brewery Case were there any goods stored for sale in this state, and in this respect each differs from the case of People v. Roberts, 91 Hun, 158, 36 N. Y. Supp. 368, and People v. Wemple, 131 N. Y. 64, 29 N. E. 1002. My conclusion is that the relator was exempt from taxation.

The determination of the comptroller should therefore be reversed, with $50 costs and disbursements, and the sum which the relator has paid in pursuance thereof should be credited to it, with interest thereon from the time of its payment, in its account with the comptroller. All concur, except HERRICK and MERWIN, JJ., dissenting.

HERRICK, J. (dissenting). I am unable to agree with Mr. Justice PARKER in the conclusion that he has reached that the relator is exempt from taxation. The theory upon which he proceeds is that the relator is carrying on two kinds of business in this state, —"one, that of manufacturing only, in which all the capital stock it had in this state was employed; the other, that of selling upon sample; and that this latter business was protected by the federal laws regulating interstate commerce"; and that, because one kind of business carried on by the relator is protected by the laws of the United States in relation to interstate commerce, and as the balance is manufacturing, thus the entire business and the entire capital stock of the corporation are exempt from taxation. Laws exempting from taxation are to be strictly construed. The statute under which the exemption is claimed in this case is section 3 of chapter 542 of the Laws of 1880, as amended by chapter 522 of the Laws of 1890, which exempts corporations "wholly engaged in carrying on manufacture or mining ores within this state." The relator is not "wholly engaged in carrying on manufacture." It is doing other business within this state besides that of manufacture. It may be, and probably is, true, that none of its capital stock is engaged in this state in any other than manufacturing business, but it has places of business, employés, and samples of its wares; and at those places of business, and by those employés, and from those samples sales are made. It is a business that is done in connection with its manufacturing, and in connection with the sales of those articles manufactured within this state, and the fact that a part of that business is exempt from taxation does not make it a corporation "wholly engaged in manufacturing." It comes within the principle of People v. Roberts, 19 App. Div. 574,

46 N. Y. Supp. 570, and People v. Wemple, 138 N. Y. 1, 33 N. E. 720, where it was said:

"There would seem to be no question that domestic corporations engaged in both state and interstate commerce may lawfully be subjected by the state to a franchise tax, measured by its whole capital or business, or in any other way, in the discretion of the legislature, without taking notice of the part of its business arising from interstate commerce, provided no hostile discrimination is made against such part. Nor would there seem to be any valid reason why a foreign corporation, engaged both in the business of state and interstate transportation in this state, should not be subject to taxation in common with domestic corporations."

See, also, People v. Campbell, 145 N. Y. 587, 40 N. E. 239.

MERWIN, J., concurs.