this be true, then it follows there is nothing upon which a tax can be imposed, for the transfer of the title was not made in contemplation of death. In support of this view, see Matter of Tilley, 151 N. Y. Supp. 79.

[2] It is also urged by the respondent that the appellant as executrix is not aggrieved by the order assessing a transfer tax and hence her appeal raises no question. The notice of appeal does not, necessarily, purport to be an appeal by the executrix. The use of the word "executrix," it might be urged, is merely descriptive; but, assuming that the appeal is taken by her as executrix, we think she had a right to appeal. In Matter of Cornell, 66 App. Div. 162, 73 N. Y. Supp. 32, it was held that:

"The executor, as such, is entitled to appeal from an order and decree fixing a transfer tax. He is made personally liable for the tax, * * * and is a party aggrieved within the meaning of the provisions of the Code of Civil Procedure relating to appeals."

The Court of Appeals modified the order of the Appellate Division (170 N. Y. 423, 63 N. E. 445), and in doing so I think necessarily held that the appeal was properly taken by the executor.

But, independent of authority, it must be that an executor of an estate against which a transfer tax has been imposed' has such an interest therein as entitles him to have an order imposing the tax reviewed on appeal.

It follows that the order, in so far as appealed from, must be reversed, with $10 costs and disbursements, and the appraiser's report modified, by deducting the transfer tax imposed upon the securities under review. All concur.

---

BUTTERICK PUB. CO. v. MISTROT–MUNN CO., Inc.    (No 7223.)

(Supreme Court, Appellate Division, First Department.    May 7, 1915.)

CONTRACTS ⚖137—VALIDITY—PARTIAL ILLEGALITY.

Plaintiff, a New York corporation, made a contract in Texas with defendant, a corporation of that state, for the sale and delivery of certain dress patterns; defendant agreeing not to sell them, except at label prices. Such agreement was unlawful under the Texas Anti-Trust Act, and defendant refused to abide by the contract. *Held* that, the part of their agreement relating to resale not being governed by the rules of interstate commerce, but by the Texas law, under which it was illegal, the whole contract was thereby rendered entirely void.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701–712; Dec. Dig. ⚖137.]

Appeal from Special Term, New York County.

Action by the Butterick Publishing Company against the Mistrot-Munn Company. From an interlocutory judgment sustaining a demurrer to a separate and complete defense, defendant appeals. Reversed, with directions.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George H. Savage, of New York City (George S. Franklin, of New York City, on the brief), for appellant.

Francis Rooney, of New York City, for respondent.

SCOTT, J. Plaintiff, a New York corporation, made a contract in the state of Texas with defendant, a Texas corporation, for the sale and delivery by plaintiff to defendant of dress patterns, which were to be resold at retail by defendant in Texas. The contracts are very elaborate, but the only provisions required to be considered on this appeal are that the patterns are to be shipped either from New York or St. Louis, Mo., to defendants in Texas, and that defendant undertakes "not to sell Butterick patterns except at label prices." By the defense demurred to defendant sets up at length the so-called Anti-Trust Act of the state of Texas approved March 31, 1903 (Acts 28th Leg. c. 94), and entitled:

"An act to define, prohibit and declare illegal trusts, monopolies and conspiracies in restraint of trade, and to prescribe penalties for forming or being connected with such trusts, monopolies and conspiracies, and to provide for the suppression of the same and to promote free competition in the state of Texas, and to repeal all laws in conflict therewith."

Defendant has refused to abide by its contract to purchase and resell plaintiff's patterns, and bases its refusal upon the claim that the stipulation in the contract by which it is bound not to resell, except at label prices, is unlawful under the said Texas statute and invalidates the contract. The respondent concedes that such would be the effect of the clause if the contract is to be judged by the Texas statute, but argues that, inasmuch as the transactions to be had under the contract consist in part of interstate commerce, over which the state of Texas may exercise no control, the contract in all its parts is immune from any charge of illegality based upon a Texas statute.

The precise question involved in this appeal has been frequently considered by the courts of Texas, the state in which the contract was made, and by the law of which it is to be judged. Those courts have found in contracts like the present a clear line of demarcation indicating where the interstate features of the contract end and the intrastate features begin. The leading case is Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241. In that case a brewer in Milwaukee had agreed to sell beer to a dealer in Texas under a contract whereby the dealer had agreed to sell the beer at special prices during the continuance of the contract. The Supreme Court of Texas held the contract to be invalid, saying:

"Unless the contract is exempted from the operation of the statute by that provision of the Constitution of the United States conferring upon Congress power 'to regulate commerce with foreign nations, and among the several states, and with the Indian tribes,' * * * it is clear, then, that when any shipment of beer was delivered under the contract by the company to Kingsbury at Amarillo, the title thereby vesting in him as we have seen above, the same ceased to be an article of interstate commerce, and, in so far as the contract dealt with it thereafter, it was not a contract with reference to an article of interstate commerce, and the clause of the Constitution above quoted does not prevent said statute from invalidating same. The case, then, comes to this: The parties contracted for the sale and purchase of beer, to be

transported from Milwaukee to Amarillo, to be there delivered to Kingsbury and become his property. So far the transaction was interstate commerce, and not subject to state regulation without the consent of Congress; nor did the statute undertake in any way to regulate in or prohibit same. But the parties by the same contract voluntarily went further, and so dealt with the subject, after it had ceased to be an article of interstate commerce, as to create a 'trust,' as above shown, in violation of the statute. A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole. Edwards County v. Jennings [89 Tex. 618], 35 S. W. 1053. The commerce clause of the Constitution was not designed to protect the contractual rights of a person who thus voluntarily intermingles an otherwise legal interstate commerce transaction with an entirely local and unlawful one. We are therefore of the opinion that, independent of congressional action, the contract sued upon was void."

The Fuqua Case has been followed and applied in a number of later Texas decisions. S. S. White Dental M. Co. v. Hertzberg (Tex. Civ. App.) 51 S. W. 355; Waters-Pierce Oil Co. v. State, 48 Tex. Civ. App. 162, 106 S. W. 918; State v. Racine S. Co. (Tex. Civ. App.) 134 S. W. 400; J. R. Watkins Med. Co. v. Johnson (Tex. Civ. App.) 162 S. W 394.

Respondent cites to us two Texas decisions which, as it is claimed, overrule the decision in the Fuqua Case. They are McCall Co. v. Stiff Dry Goods Co. (Tex. Civ. App.) 142 S. W. 659, decided in 1912, and Albertype Co. v. Gust-Feist Co., 102 Tex. 219, 114 S. W. 791, decided in 1908. Both of these cases were earlier than J. R. Watkins Med. Co. v. Johnson, supra, which was decided in November, 1913, and a rehearing denied in January, 1914. The Supreme Court of Texas denied a motion for a writ of error (170 S. W. xviii), thus in effect affirming the judgment. In that case the opinion of the Court of Civil Appeals discussed the McCall Case and the Albertype Case as follows:

"It seems that the case of McCall v. Stiff Dry Goods Co. is in conflict with our holding in this case, and, as we believe, with Fuqua v. Brewing Co., supra. In the former case, a contract similar in form and made under much the same circumstances as the one now under consideration was declared without the operation of the anti-trust laws of Texas, because the transaction was interstate in its nature. * * * Albertype Co. v. Feist Co. seems upon first reading to be in conflict with Fuqua v. Brewing Co., supra; but a careful analysis will show that the court did not intend to overrule the Fuqua Case and that they are clearly distinguishable. * * * In the Feist Case no effort was made to control or limit the disposition of the goods 'after they had ceased to be an article of interstate commerce,' but to bind the seller (Albertype Company) to sell the same class of goods to no other person in the same territory for a limited time. The contract clearly shows that Feist & Co. were in no manner limited in their right to sell or to fix the price of the goods, or in any manner to control or limit the free and unrestrained traffic in the goods sold after the title thereto vested in Feist & Co."

The same distinction between provisions in the same contract, some of which do, and others of which do not, constitute interstate commerce, was very clearly recognized by the Supreme Court of the United States in Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, wherein the court said, by Mr. Justice Hughes:

"The plaintiff brings this writ of error, assailing the validity of the statute, as construed by the state court, (1) as an unconstitutional interference with interstate commerce; and (2) as depriving the plaintiff of its liberty and property without due process of law.

"First. We do not find that the decision of the state court involves a de-

nial of any right incident to interstate commerce. The contract, it is true, provided for purchases by the defendant from the plaintiff, the deliveries to be made at Chattanooga, Tenn., for transportation to the defendant at Jackson, Miss. So far as appears, however, there were no purchases and no deliveries. The reason obviously is that the agreement looked to resales by the defendant in Hinds county. Finding that such sales would be against the local law, he refused performance in limine. The state court did not deny to the plaintiff the right to sell to the defendant or to have its article transported and delivered to the defendant in interstate commerce. Rhodes v. Iowa, 170 U. S. 412 [18 Sup. Ct. 664, 42 L. Ed. 1088]; Louisville & Nashville R. R. Co. v. Cook Brewing Co., 223 U. S. 70, 82 [32 Sup. Ct. 189, 56 L. Ed. 355]. It had no such question before it. This suit was brought to recover the amount which the defendant promised to pay for the exclusive right of making sales in Hinds county. In this aspect, the validity of the contract under the state law was to be judged by its provisions for sales within the state. The contract contained no suggestion that these sales were to be limited to those made in the original packages imported. Its provisions were broad enough to include other sales, and hence encountered the local statute as applied to transactions outside the protection accorded by the federal Constitution to interstate commerce."

The distinction referred to has also been recognized by the courts of our own state in cases involving, however, quite different facts from the present. People ex rel. Hatch v. Reardon, 184 N. Y. 431–453, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628, 6 Ann. Cas. 515, affirmed 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736; People ex rel. Parke Davis & Co. v. Roberts, 91 Hun, 158, 36 N. Y. Supp. 368, affirmed 149 N. Y. 608, 44 N. E. 1127.

That the contract, being illegal and void in the particular pointed out, is thereby rendered wholly void was distinctly held in the Fuqua Case, and it clearly must be so. In Saratoga County Bank v. King, 44 N. Y. 87, the contract under consideration involved, as one of its conditions, an illegal restraint of trade. The court said:

"It is claimed that the proviso and that portion of the contract restraining the vendors from carrying on their trade or manufacture only are void, while the sale of the property and the obligation of the vendees to pay for it are valid and obligatory; that it is the duty of the court to separate the good consideration from the void provisions of the transaction. * * * The parties here are in equal fault. The vendors violated the rule of public policy just as much as the vendees. It is probable that neither party knew that their contract was illegal. There is nothing immoral in it. It is simply a forbidden contract by the rules of the common law, as operating too great a restraint upon the right to exercise a trade or manufacture, and in that way working a general injury to the community, and hence void on grounds of public policy. But this probable want of a guilty knowledge will not save the action."

The appellant makes no claim of illegality based upon the provisions of the Sherman Anti-Trust Law (Act July 2, 1890, c. 647, 26 Stat. 209), and it is therefore unnecessary to consider the arguments addressed to a consideration of that statute.

Our conclusion is that the defense demurred to is sufficient in law. It follows that the interlocutory judgment appealed from must be reversed, with costs, and the demurrer overruled, with costs, with leave to plaintiff to withdraw demurrer, on payment of costs in this court and in the court below. Order filed. All concur.