## ANGLO-CHILEAN NITRATE SALES CORP. *v.* ALABAMA.

No. 377.   Argued January 19, 1933.—Decided February 6, 1933.

*Mr. R. Worth Vaughan,* with whom *Mr. Elihu Root, Jr.,* was on the brief, for appellant.

*Messrs. Thomas E. Knight, Jr.,* Attorney General of Alabama, and *Frontis H. Moore,* Assistant Attorney General, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellant is a New York corporation having its principal office in that State. October 10, 1927, it qualified to do business in Alabama, and March 14, 1930, made and sent to the state tax commission a return showing that its

only property in Alabama on December 31, 1929, the date as of which the statute required the statement to be made, was 33,455,763 pounds of nitrate of soda which had been imported by it from Chile into Alabama and stored in the original packages, the book value of which was $712,846.72. March 31, 1930, the commission under § 54 of No. 163, General Acts, 1927,[1] assessed against appellant for that year a franchise tax of $1,425.69, being at the rate of two dollars on each one thousand dollars of the value so reported.

Conformably to state practice appellant appealed to the circuit court of Montgomery county. The case was submitted on an agreed statement of facts the abridged substance of which follows:

From the date of its qualification in Alabama to the time of the assessment, appellant was engaged in the business of importing nitrate through the port of Mobile and other ports. The nitrate, in bags containing about 100 pounds each, was brought into Mobile and there stored

---

[1] Section 54 of Act No. 163, Alabama General Acts, 1927, p. 176, provides:

" That every corporation organized under the laws of any other state, nation, or territory, and doing business in this State, except strictly benevolent, educational or religious corporations, shall pay annually to the State an annual franchise tax of Two Dollars ($2.00) on each One Thousand Dollars of the actual amount of capital employed in this State. In ascertaining the annual franchise tax which shall be paid by any foreign corporation doing business in this State under this section, there shall be deducted from the amount of the capital employed by such corporation in this State the aggregate amount of loans of money made by such corporation in this State, and which shall be secured by existing mortgage or mortgages to it on real estate in this State, and upon which mortgages there shall have been paid the recording privilege tax provided by law."

For the derivation of this section see: § 16 of Act No. 464, General Acts, 1915, p. 397. § 16 of Act No. 328, General Acts, 1919, p. 291. § 11 of Act No. 172, General Acts, 1923, p. 164, as amended by Act No. 263, General Acts, 1923, p. 267.

by appellant in a public warehouse and kept in the original packages until sold and delivered to the ultimate consumers. All was sold upon orders through a salesman who, paying his own expenses, was compensated by commissions on his sales. , The orders were taken subject to approval and were not effective until approved by appellant in its New York office. When so accepted, directions were given that the nitrate be forwarded to the customers. These directions were given to and carried out by the Walsh Stevedoring Company at Mobile, an independent contractor, having an arrangement with appellant to handle its importations of nitrate, store it in a public warehouse and forward it as directed.

All transactions were for cash. The customers received the nitrate only upon payment of the purchase price when they took up the shipping documents through a bank of collection by paying the drafts attached. Such payments were sent to the Merchants National Bank at Mobile and by it immediately transferred to appellant in New York. Appellant had no bank account in Alabama and paid all expenses there by remittances from New York. On the date as of which appellant's return was made it had no accounts or bills receivable in Alabama and had no money there at any time except during the brief intervals that the funds were being so transmitted. It did not have or employ any capital in that State unless the importation through the port of Mobile, the storage and sale, of nitrate in the manner above described, constitutes capital and its employment there.

Section 54, under which the assessment was made; declares that every corporation organized under the laws of any other State and doing business in Alabama shall pay to the State an annual franchise tax of two dollars on each thousand dollars of the actual amount of capital employed therein. Appellant maintained below and here insists that the section, construed to impose the tax in question,

is repugnant to the declarations of the federal Constitution: "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws," Art. I, § 10, cl. 2, and ."The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . . " Art. I, § 8.

The Alabama statute in question was enacted in pursuance of § 232 of the state constitution which declares: No foreign corporation shall do any business in the State without having a place of business and an authorized agent therein and without filing with the secretary of state a certified copy of its articles of incorporation. "The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this State." As to the meaning and purpose of the statute, we are governed by the construction put upon it by the state supreme court.

Its decisions clearly show that the exaction is laid, not upon the authorization, right or privilege to do business in Alabama, but upon the actual doing of business. While the case at bar was pending on appeal there, the state supreme court in *State* v. *National Cash Credit Assn.*, 224 Ala. 629, 632; 141 So. 541, held that the mere investment in or ownership of property in the State by a foreign corporation does not subject it to the franchise tax. Adverting to the language of the statute, it declared that the "property must be employed in a corporate business done in this state." On rehearing, May 19, 1932, and after its decision in the case before us, that court said: "We merely hold a franchise tax to be what it purports to be, a tax upon the exercise or use of its franchise in Alabama for the purposes of such franchise; and that,

if no corporate activity is conducted in Alabama during the period covered by the tax, the corporation does not owe a franchise tax."

And in the case at bar the court said: "The defendant duly qualified as a foreign corporation to do business in this state, appointed a resident agent, and that it actually engaged in business in Alabama by selling its nitrate through a salesman both within and without the state appears as an uncontroverted fact. It seeks to be relieved from this franchise tax solely upon the theory the imported nitrate, the sale of which constituted its business, was immune from state taxation. . . . The statute here under review has no reference to imports, but is merely of a general character relating to the fixation of the amount of a franchise tax upon foreign corporations doing business in this state." And, after referring to the manner of appellant's acceptance of orders and the collections and remittances, the court said: "These details go to show the corporation was actually engaged in business in this state . . . " As appellant did no local business in the State, that decision plainly rests upon the assumption that Alabama had power to tax appellant's sales in original packages of the nitrate it imported into that State only for sale and that such sales constituted a business that is taxable under § 54. The Alabama statute is unlike that of Michigan examined here in *Detroit International Bridge Co.* v. *Michigan,* 287 U. S. 295, and *Michigan* v. *Michigan Trust Co.,* 286 U. S. 334, 342. There the tax upon a domestic corporation was imposed for the mere right to transact business.

The fact that appellant qualified to do business in Alabama was not, and rightly cannot be, held to sustain the tax. In *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555, we condemned as repugnant to the commerce clause a Missouri statute that required every foreign corporation engaged in business in that State to pay an annual franchise tax upon the privilege or right to do business.

The company's business there consisted in the operation of a pipe line for interstate transportation of oil and in the ownership of property, the keeping of its principal office, purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines all in furtherance of such interstate commerce and constituting the means and instruments by which it was conducted. We held that the tax could not be constitutionally exacted, and that the facts that the foreign corporation was organized for local business and had applied for and received a local license conferring the power of eminent domain did not enable the State to tax its right to carry on interstate commerce. We said (p. 567): "The state has no such power even in the case of domestic corporations. See *Philadelphia S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 342."

The question whether, consistently with the imports and commerce clauses, the Alabama statute may be construed to require appellant to pay the specified franchise tax is dual in form but single in substance, for, upon the facts of this case, it is clear that if the exaction is a tax on imports it necessarily burdens foreign commerce. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 295.

The stipulation of the parties shows that the only transactions in Alabama in which appellant is concerned are the landing, storage and sale of the nitrate in the form and packages in which it was put up abroad and transported into the United States. The bags were kept intact; no nitrate was removed therefrom and, prior to the delivery of the same to those who bought from appellant, it was not in any manner commingled with, and did not become a part of, the general mass of property within the State. The right to import the nitrate included the right to sell it in the original bags while it remained the property of appellant and before it lost its distinctive character as an import. State prohibition of such sales

would take from appellant the very rights in respect of importation that are conferred by the Constitution and laws of the United States. Alabama was powerless, without the consent of Congress, to tax the nitrate before such sales or to require appellant by the payment of occupation or franchise tax or otherwise to purchase from it the. privilege of selling goods so imported and handled. *Brown* v. *Maryland,* 12 Wheat. 419, 436, 442–444. In that case a state license fee imposed on an importer selling imported goods in the original bales or packages was condemned as repugnant to the imports and commerce clauses. Chief Justice Marshall said (p. 444): "All must perceive, that a tax on the sale of an article, imported only for sale, is a tax on the article itself. . . . A tax on the occupation of an importer is . . . a tax on importation. It must add to the price of the article, and be paid by the consumer, or by the importer himself, in like manner as a direct duty on the article itself would be made. This the State has not a right to do; because it is prohibited by the constitution."

In *Cook* v. *Pennsylvania,* 97 U. S. 566, the court held offensive to the same provisions a tax on the amount of the sales of imported goods in the original packages made by an auctioneer for the importer. In *May* v. *New Orleans,* 178 U. S. 496, the court (p. 507) formally reaffirmed and succinctly stated the propositions established in *Brown* v. *Maryland,* but held that the city tax there involved did not violate the imports or commerce clause because the imported goods were not sold in the original package.[2] And recently in *Willcuts* v. *Bunn,* 282 U. S. 216, we said (p. 228): " When the Constitution prohibits States from laying duties on imports, the prohibition not

[2] Cf. *Austin* v. *Tennessee,* 179 U. S. 343, 359. *Cook* · *Marshall County,* 196 U. S. 261, 270. *Kirmeyer* v. *Kansas,* 236 U. ʟ. 568, 573. *Price* v. *Illinois,* 238 U. S. 446, 454. *Hebe Co.* v. *Shaw,* 248 U. S. 297, 304.

only extends to a tax upon the act of importing, but also to one upon the occupation of the importer or upon the articles imported. A tax on the sale of an article, imported only for sale, is a tax on the article itself. *Brown* v. *Maryland*, 12 Wheat. 419, 444." And see *Almy* v. *California*, 24 How. 169. *Fairbank* v. *United States*, 181 U. S. 283. *Selliger* v. *Kentucky*, 213 U. S. 200. *United States* v. *Hvoslef*, 237 U. S. 1. *Thames & Mersey Ins. Co.* v. *United States*, 237 U. S. 19. *Crew Levick Co.* v. *Pennsylvania, supra.* *Sonneborn Bros.* v. *Cureton*, 262 U. S. 506, 509. The constitutional protection extends to corporations as well as to individuals. *Crutcher* v. *Kentucky*, 141 U. S. 47, 57. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 108.

In support of its conclusion the state court cited and appellee relies upon *New York* v. *Roberts*, 171 U. S. 658. The question for decision in the case now before us was not involved, presented or decided there. The statute of New York considered there imposed a tax on the business or franchise of domestic and foreign corporations except, among others, those wholly engaged in carrying on manufacture in the State. The taxpayer, Parke, Davis & Company, was a Michigan corporation. It had its factory in Detroit and a warehouse and depot in New York. It had a manager and over 50 employees there. It did local business and also sold in original packages goods received from its factory and goods imported for it from foreign countries. The tax rate was graded by the statute according to dividends (presumably paid out of net earnings). Cf. *U. S. Glue Co.* v. *Oak Creek*, 247 U. S. 321. The tax base was the amount of capital employed within the State and the comptroller fixed that amount at $90,000. The corporation, seeking to have the assessment set aside, took the case to the state supreme court. It sustained the assessment against the contention that the statute as construed by the comptroller was repugnant to

the privileges and immunities clause, Art. IV, § 2, and held that the business was "not interstate commerce, which will prevent the corporation carrying it on from being taxed, . . ." 91 Hun 158, 162; 36 N. Y. S. 368. No other federal question was considered. The court of appeals affirmed without opinion. In this court the corporation's principal insistence was that the statute was repugnant to the equal protection clause of the Fourteenth Amendment in that it exempted domestic corporations manufacturing and selling in New York while imposing upon the Michigan corporation a discriminatory tax for selling in New York in original packages products manufactured in its Detroit factory. The court overruled that contention. The opinion shows that as to the amount of its capital employed in New York no federal question was presented. And, as admittedly the corporation did a local business in that State, i. e., business not included in interstate or foreign commerce (171 U. S. 659; 91 Hun 160; 36 N. Y. S. 368), that case is essentially different from this one.

The decisions here since *New York* v. *Roberts, supra,* definitely show that the power of the State to withhold from a foreign corporation permission to exercise its franchise to do business therein does not enable it, when granting the privilege, to burden by taxation interstate commerce carried on by such corporation within the State. And quite recently in *Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426, we said (p. 434): " Thus the right to exclude a foreign corporation cannot be used to prevent it from resorting to a federal court, *Terral* v. *Burke Construction Co.,* 257 U. S. 529; or to tax it upon property that by established principles the State has no power to tax, *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and other cases in the same volume and later that have followed it; or to interfere with interstate commerce, *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 203; *Looney*

v. *Crane Co.*, 245 U. S. 178, 188. *Western Union Telegraph Co.* v. *Foster*, 247 U. S. 105, 114." See *Ozark Pipe Line* v. *Monier, supra,* *Alpha Cement Co.* v. *Massachusetts*, 268 U. S. 203. *Frost Trucking Co.* v. *Railroad Comm'n*, 271 U. S. 583, 593, *et seq.* *Sprout* v. *South Bend*, 277 U. S. 163, 170–171. *New Jersey Tel. Co.* v. *Tax Board*, 280 U. S. 338, 346. *East Ohio Gas Co.* v. *Tax Comm'n*, 283 U. S. 465, 470.

It follows that the Alabama statute, construed to impose a tax upon appellant for selling in that State in the original packages the nitrate imported by it from Chile, is repugnant to the imports and commerce clauses above quoted. And, as it did no other business in that State, it is not liable for any part of the tax that the state commission assessed against it.

*Judgment reversed.*

MR. JUSTICE CARDOZO, dissenting.

This case does not present the question that would be here if the appellant had not sought for and obtained a privilege or franchise to do a local business in the state of Alabama. There is nothing in the Alabama decisions, and little in her statutes, to indicate that the tax would have been sustained in the absence of such a grant, or that there would have been even an attempt to levy it. *Ewart Lumber Co.* v. *American Cement Co.*, 9 Ala. App. 152, 156; 62 So. 560; *Citizens National Bank* v. *Buckheit*, 14 Ala. App. 511, 517, 519; 71 So. 82; *Tyson* v. *Jennings Produce Co.*, 16 Ala. App. 374, 375; 77 So. 986; *Ware* v. *Hamilton Brown Shoe Co.*, 92 Ala. 145, 149; 9 So. 136; *Cook* v. *Rome Brick Co.*, 98 Ala. 409, 413; 12 So. 918; *Stratford* v. *City Council of Montgomery*, 110 Ala. 619; 20 So. 127; Alabama Code of 1928, § 7217, limiting the application of §§ 7209 to 7220. Indeed the Attorney General informed us on the argument that this would have been the position of his department of the Govern-

ment, charged, as it is, with the collection of the revenues of the state. Alabama has said by her courts that it is beyond the power of the legislature to restrict by conditions the exercise or enjoyment of a privilege that has its origin and sanction in the constitution of the nation. See cases *supra*. Alabama has said by her statutes (Code, § 7217), that the permits and franchise taxes exacted of foreign corporations by article 26 of the Alabama Code do not apply to corporations " engaging in or transacting business of interstate commerce only," if the privilege they ask for is that and nothing more. The act now in question (§ 54 of Act No. 163, approved July 22, 1927, Alabama General Acts, 1927, p. 176) was passed in fulfilment of a mandate laid upon the legislature by § 232 of the Alabama Constitution. By that section it is provided that no foreign corporation shall do business in that state " without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association." By the same section: " the legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based upon the actual amount of capital employed in this state." It is this section that the courts of Alabama have adjudged to be inapplicable to interstate business. See cases *supra*. If that is the construction to be given to the command whereby the legislature was to establish a franchise tax and measure it in a certain way, there can be no doubt that the same construction must be given to the statute passed thereafter to give effect to the command. The power abjured in one breath was not exerted in the next.

With this approach to the problem, the pathway is made open. When the legislature of Alabama said in 1927 that an annual tax was imposed upon the fran-

chise of every foreign corporation, it meant to lay the burden upon those franchises and those only which there was power in Alabama to grant or to withhold. If the corporation was there by virtue of a dual right, the one created by the state, and no other, was to be subjected to the charge. The presumption of that intention is hardly to be escaped in view of past disclaimers of a purpose more pretentious. True there is another section of the same act whereby a written permit is exacted for " the purpose of registration and to prevent the duplication of names and in order to secure for the public record, for taxation, and for other purposes, the names and addresses of the corporation," and its officers (Act. No. 163, § 42). True also that for such a permit there is to be paid an annual tax varying from $5, the minimum, to $100, the maximum. The statute provides, however, that the tax imposed by that section shall be " in addition to other license or privilege taxes required to be paid by law." There is thus a tax in the nature of a fee to be paid in instalments as compensation for the permit, and another tax, measured by the capital in use within the state, upon the underlying franchise. The fee for the permit does not rebut the inference that there is not to be a tax upon the franchise unless user is a privilege that issues from the state. Doubt, if there is any, will be resolved in favor of the construction that keeps the act alive.

The appellant was not satisfied to stand upon its federal right, though the state had made it plain that the claim of right would be respected. It was seeking something more, the privilege of going over the line that marks the federal immunity; and to that end it asked for and obtained a license or franchise, the name is unimportant, to do a local business as well as one related to interstate or foreign commerce. By the grant thus pro-

cured, it became free, at its unfettered will, to sell at wholesale or at retail, in the original packages or in others, unhampered by the restrictions that would have limited its capacity if it had been there as an importer and with the powers of an importer only. This franchise or privilege, this grant of benefits beyond any conferred by the federal constitution, the state of Alabama was competent to tax. *Home Ins. Co.* v. *New York,* 134 U. S. 594; *Ashley* v. *Ryan,* 153 U. S. 436, 440; *Kansas City, F. S. & M. Ry. Co.* v. *Botkin,* 240 U. S. 227; *Lusk* v. *Botkin,* 240 U. S. 236; *St.Louis, S. W. Ry. Co.* v. *Arkansas,* 235 U. S. 350; *Kansas City, M. & B. R. Co.* v. *Stiles,* 242 U. S. 111, 117; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Educational Films Corp.* v. *Ward,* 282 U. S. 379; *Pacific Co.* v. *Johnson,* 285 U. S. 480, 489; *Detroit International Bridge Co.* v. *Corp. Tax Appeal Board,* 287 U. S. 295. There being competence to tax, there was competence to measure the burden of the payment by capital employed, irrespective of the use to which employment is directed. *Educational Films Corp.* v. *Ward, supra; Pacific Co.* v. *Johnson, supra; Flint* v. *Stone Tracy Co., supra; Home Ins. Co.* v. *New York, supra.* There may be a wrong to the taxpayer if the standard of measurement is oppressive and unreasonable. *Western Union* v. *Kansas,* 216 U. S. 1. There is none where the standard bears a fair and natural relation, in its normal or average workings, to the privilege conferred.

The argument is made, however, that the tax though declared by the express terms of the statute to be a tax upon the " franchise," is confined to corporations " doing business " in Alabama, and hence is to be viewed as a tax upon the kind of business actually conducted, and not upon the franchise to conduct it in that or other ways. More than once a like argument directed to statutes phrased in the same way has been urged upon this court, only to be rejected as unsound. *Home Life Ins. Co.* v. *New York, supra; St. Louis, S. W. Ry. Co.* v. *Arkansas,*

*supra; Louisville & N. R. Co.* v. *Alabama,* 248 U. S. 533; 201 Ala. 317; 78 So. 93 (involving a statute of Alabama similar to this one); *Kansas City, M. & B. R. Co.* v. *Stiles,* 242 U. S. 111, affirming 182 Ala. 138; 62 So. 734; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 145, 146. Thus, in *Home Life Ins. Co.* v. *N. Y., supra,* a statute provided that every corporation then or thereafter incorporated under any law of the state or of any other state or country, " and doing business in the state," should be subject to a tax " upon its corporate franchise or business," measured by its dividends. The court held that the tax was one upon the privilege " of doing business in a corporate capacity," and not upon the business or activities that were the outcome of the privilege. Cf. *Flint* v. *Stone Tracy Co., supra,* pp. 145, 146; *Michigan* v. *Michigan Trust Co.,* 286 U. S. 334, *Detroit International Bridge Co.* v. *Corp. Tax Appeal Board, supra.* There would be greater force in the appellant's argument if its construction of the tax as one upon the activity or the business had support in anything decided by the courts of Alabama. To the contrary, the highest court of the state has put that meaning aside by its opinion in this very case. Adopting the reasoning of this court in *Flint* v. *Stone Tracy Co., supra,* it has said that " the tax is an excise upon the particular privilege of doing business in a corporate capacity, and with the advantages derived therefrom. *State* v. *Anglo-Chilean Nitrate Sales Corp.,* 142 So. 87, 91; cf. *Louisville & N. R. Co.* v. *State,* 201 Ala. 317, 318; 78 So. 93; *Ellis* v. *Handley Mfg. Co.,* 214 Ala. 539; 108 So. 343; *Kansas City, M. & B. R. Co.* v. *Stiles,* 182 Ala. 138; 62 So. 734. True indeed it is that the corporation will be relieved of the burden if no business is transacted and no capital employed (*State* v. *National Cash Credit Ass'n,* 224 Ala. 629; 141 So. 541), but so was the corporation in the *Home Life Insurance* case, and so also were the corporations in many other cases. *Flint* v. *Stone Tracy Co., St. Louis, S. W.*

*Ry. Co.* v. *Arkansas, Louisville & N. R. Co.* v. *Alabama, Kansas City, M. & B. R. R. Co.* v. *Stiles, supra.* If the state has conferred a privilege which it is competent to tax, the competence is not lost, and the validity of the tax destroyed, because the privilege is to be free when the corporation is inactive. There is a requirement in the Alabama constitution, repeated in the statute, that the tax upon the franchise shall be measured by the capital employed within the state, a measure obviously inapplicable to dormant corporations. In such circumstances, activity is an event that conditions liability, but the privilege, not the event, is still the subject of the burden. To resume the matter in a few words: the tax is not imposed upon those capacities and privileges that emanate by implication from the power of the nation. The tax is laid upon those privileges, and those only, that emanate either expressly or by implication from the power of the state. Business, it is true, must have been done, for without the doing of business there can be no capital employed. Even so, capital and business are by-products and incidents, like dividends or income. *Flint* v. *Stone Tracy Co.* They are the yardstick by which the state measures the value of the privilege. They are not the privilege itself.

The argument is made that "capital employed" is an illegal and arbitrary measure because the appellant has made no use of the taxable franchise emanating from the state, but has confined its activities to interstate or foreign commerce. What has been said in recent cases (*Educational Films Corp.* v. *Ward, supra,* and *Pacific Co.* v. *Johnson, supra*), goes far to give the answer. There was no attempt here as there was in *Western Union Telegraph Co.* v. *Kansas, supra,* or in *Looney* v. *Crane Co.,* 245 U. S. 178, or in *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, or in other cases of that type, to burden a local privilege in close association with one not local by a levy upon values beyond the confines of the state.

Cf. *Kansas City M. & B. R. Co.* v. *Stiles,* 242 U. S. 111, 119; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Wallace* v. *Hines,* 253 U. S. 66; *Cudahy Packing Co.* v. *Hinkle,* 278 U. S. 460; *Educational Films Corp.* v. *Ward, supra,* at p. 391. The measure here was capital employed in Alabama (*St. Louis, S. W. Ry.* v. *Arkansas, supra; Louisville & N. R. Co.* v. *Alabama, supra*); and it was a mere fortuity that in this instance the capital was made up of imports still intact. Moreover, what was done under the franchise one day might not be done under it the next. Another franchise tax would not be owing for a year. In the meantime the appellant might transact its business as it pleased. If some of its sales, however few and trifling, had been made in broken packages, there would be no denial by any one that the privilege of making them would be subject to taxation by one measure or another. This court has never held that the measure in such circumstances would be arbitrary and unlawful because determined by the value of all the local capital, and not merely the proportion necessary for sales in broken lots. In principle the situation would then be governed by the ruling in *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290, and *Western Cartridge Co.* v. *Emmerson,* 281 U. S. 511, where an apportionment very similar had the approval of this court. Especially must the standard hold when the statute is directed against foreign corporations generally, and not particularly against such of them as are engaged in interstate or foreign commerce. If the standard is a valid one when the privilege is used, it does not cease to be valid because user is abandoned or postponed. Very likely the statute might have been read in a different way. It might have been read as imposing two conditions, first that business should have been done, and second that what was done could be attributed, at least in part, to the actual exercise of the privileges granted by the state. As to such matters of construction the

courts of the state may speak the final word. All that concerns us here is capacity or power. Here was no covert effort by the state to extend its taxing jurisdiction into an area denied to it. The burden upon interstate business in *Western Union* v. *Kansas* and the other cases cited, was an outcome inherent in the statutory scheme; it was the very event intended. The burden here, if there was any, was unforeseen and adventitious. Cf. *Plummer* v. *Coler*, 178 U. S. 115; *Kansas City, M. & B. R. Co.* v. *Stiles, supra.*

None of the decisions cited by the appellant controls the case at hand.

*Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555, is invoked with special confidence. There are obvious distinctions. The statute of Missouri there held to be invalid in its application to a corporation engaged in interstate commerce was very similar in form to the statute of Alabama in controversy here. The conduct of the aggrieved corporation was, however, very different. Its business was the operation of a pipe line from oil wells in Oklahoma passing through Missouri to a destination in Illinois. Nothing was done in Missouri, or so the court interpreted the evidence, except in furtherance of transportation. Oil was neither received nor delivered in that state. In these circumstances the corporation asked for and obtained from Missouri a license to " engage *exclusively* in the business of transporting crude petroleum by pipe line." 266 U. S. at pp. 561, 567. This, however, was the very business that was incidental to the federal right. The privilege to transport upon the interstate journey was an essential incident of commerce, and so an emanation from the federal power. The court did not hold that the tax would have been unlawful if laid upon a franchise emanating from the power of the state. The court condemned the

tax for the reason that it read the statute as designed to lay a burden on the franchise to do business as an interstate carrier. The imputation of that design was borne out in a measure by the remedy, for the state had brought a suit not only to impress a lien upon the property, but to revoke the license altogether (p. 561), limited though it was. Cf. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 119; *Southern Ry. Co.* v. *Watts,* 260 U. S. 519, 530. If there had been decisions in Missouri, as there are in Alabama, disclaiming a purpose to affect the federal privilege, and if the state and federal privileges had varied substantially from each other in meaning and in function, the parallel would be closer between the *Ozark* case and this. But if those conditions had been present, the result must have been changed.

Other cases, emphasized in the briefs, are still more faintly applicable.

*Crew-Levick Co.* v. *Pennsylvania,* 245 U. S. 292, brought before us a tax upon the business of foreign commerce, whether conducted by natural persons or by corporations. Its measure was the gross receipts. " It bears no semblance of a property tax or a franchise tax in the proper sense; nor is it an occupation tax except as it is imposed upon the very carrying on of the business of exporting merchandise." 245 U. S. 297. Cf. *Phila. & Sou. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326. The conclusion would have been different if net income, and not gross, had been adopted as the measure. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328; *Peck & Co.* v. *Lowe,* 247 U. S. 165; *Shaffer* v. *Carter,* 252 U. S. 37, 52. The case has no relation to the validity of a tax to be measured by local capital and imposed upon a privilege.

*Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, dealt with a statute of Massachusetts, different in

form from this, and interpreted as one laid directly upon the operations of the business. Cf. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196. No license or franchise to engage in a local business had been granted by the state.

*Brown* v. *Maryland,* 12 Wheat. 419, was a case of a discriminatory tax upon the business of importers, and *Cook* v. *Pennsylvania,* 97 U. S. 566, a case of a discriminatory tax upon an auctioneer selling for importers. In neither was there a franchise, or a tax upon a franchise, or a reference to capital as a standard of measurement. In each the presence of imported packages to be subjected to a burden was an event considered and intended, not an adventitious circumstance developing unexpectedly in the application of the tax to one taxpayer out of many.

The tax imposed by this statute does not discriminate between domestic and foreign corporations to the prejudice of the latter. Domestic corporations pay a franchise tax that is measured by their whole capital; foreign corporations one that is measured by " the actual amount of capital employed " within the state. It does not discriminate between foreign corporations engaged in interstate or foreign commerce and other foreign corporations. It lays a burden on all impartially. Finally, it is not oppressive in amount, nor framed in such a form as to suggest a furtive purpose to stifle activities not covered by its terms. The tax is $2 per thousand dollars until 1932, and $1 per thousand afterwards. General Acts of Alabama, 1927, § 56, p. 177.

The appellant is in the enjoyment of a privilege of value which it solicited and received from the state of Alabama, and for that privilege it should pay.

Mr. Justice Brandeis and Mr. Justice Stone join in this dissent.